IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
RICHARD GREEN, Sr., et al.,   )
                              )
     Plaintiffs,              )
                              )   CIVIL ACTION NO.
v.                            )
                              )   01-AR-1279-S
RONNIE CROCHET, et al.,       )
                              )
     Defendants.              )
                              )
                              )
```

03 JAN 13 PM 3:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 13 2003

## MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by defendants, Crochet Equipment Company, Inc. ("CEC"), and Ronnie Crochet ("Crochet"), president and stockholder of CEC. The complaint of Finley Properties, Inc. ("Finley") and Richard Green, Sr. ("Green"), sole stockholder of Finley, contains six alleged causes of action: (1) misrepresentation of material facts, (2) suppression of material facts, (3) breach of express warranty, (4) breach of implied warranty, (5) breach of contract, and, (6) negligence. The motion is due to be partially granted and partially denied.

### Statement of Undisputed Facts

CEC is in the business of manufacturing and selling incinerators. During the relevant time period Finley operated a landfill on Finley Boulevard in Birmingham, Alabama. Around June of 1996, Green, on behalf of Finley, requested of CEC information

about incinerators. CEC sent Finley an advertising video about an incinerator it had sold to the city of Bristol, Virginia. The Bristol incinerator was a Model 2012 Fliptop Incinerator that burns 14 tons per day. Green made a trip to Bristol to inspect and view the incinerator. After his trip to Bristol, Green told Crochet that he would need a larger incinerator. Green claims that he told Crochet that in order to make a profit he needed an incinerator that would burn up to 40 to 50 tons per day. Crochet denies that Green ever told him this. Crochet recommended the Model 3012 which is a 21 ton per day unit. Green claims that Crochet stated that the Model 3012 could meet the desired capacity of 40 to 50 tons per day. Crochet denies having made this representation but admits that it would have been a misrepresentation if made. He denies it could have been a false misrepresentation because he did not know at the time what the Model 3012's capacity was, even though it was called a "21 ton per day" incinerator. Jay Phillips ("Phillips), a CEC employee, testified that the Model 3012 capacity rating is really not 21 tons per day even though the incinerator is described as such by CEC. Crochet testified that he rates the capacities of all CEC incinerators conservatively.

 All correspondence between Finley and CEC refers to the incinerator sold to Finley as the 21 ton per day Model 3012. Green claims that based on the representations made by CEC and

2

Crochet that he ordered the Model 3012 Incinerator. Finley purchased the Model 3012 Fliptop Incinerator from CEC for $425,000 around November 1998. Green testified that he did not individually purchase the incinerator from CEC. In August 1997, CEC began the permit application process for Finley with Jefferson County and the City of Birmingham. During the application process permit applications errors were made. CEC included the manufacturing numbers for the Model 2012 Incinerator instead of the 3012 Incinerator.

After discovery of the permit application errors, Finley sought to amend certain language in the City of Birmingham's Resolution and its incinerator permit. Jason Combs ("Combs"), one of CEC's employees, was told by Green that he wanted the amended permit to reflect that the incinerator burned more pounds per hour than originally listed. In March 1999, Crochet provided the following written response to Green's request: "Jason said you wanted to ask for 8,500 pounds per hour. This means in an eight hour day you would be disposing of 34 tons of waste per day . . . I have this unit at 21 tons per day; however, theoretically this unit can dispose of 53.5 tons per day . . ." CEC also recommended that Green not correct the false information on the county permit until after the unit was in operation. Green prepared a draft letter for Crochet's signature to be sent to Jefferson County. In the letter Green included his understanding of what the true and

accurate numbers were regarding the Model 3012 incinerator. Crochet admitted that the numbers Green cites in this letter were numbers that were provided to him by CEC and Crochet. Crochet response to Green's letter was: "Richard: I am not comfortable with this letter. I truly believe you could open yourself up to losing your permit." Crochet does represent in his version of the letter that the Model 3012 ordered by Finley had a capacity of 9,942 lbs. per hour based on an 8 hour day and "your capacity would be 48.6 tons per day." Crochet now admits that, at the time the letter was written, he did not believe the Model 3012 would even produce 42.5 tons per day based on a 10 hours burn rate.

Phillips helped to install and set up the incinerator. During that process, he had daily discussions with Green about the necessity of burning 40 to 50 tons per day of waste. Phillips relayed this expectation back to Crochet. Crochet told Phillips it was possible to get 40 to 50 tons per day in the Model 3012 and to continue with the project. In an eight hour stack test, approximately 40 tons of waste were loaded and burned in the Finley incinerator. Green claims that he was never able to obtain even an average of 21 tons per day and that the incinerator had experienced countless problems due to poor design and construction. Around May/June of 2001, Finley shut its incinerator down.

## Analysis

For some strange reason Green has joined Finley as a plaintiff. The two plaintiffs are, of course, separate entities. Defendants point out that all claims allege harm to the corporation. Defendants say with good reason that Finley is the only real party in interest, and therefore, partial summary judgment should be granted as to all claims purportedly made by Green.

"It has long been established that a corporation, just like an individual, must enforce its own rights and privileges." *See Ex Parte ReLife, Inc. v. George B. Warren, Jr.*, 679 So.2d 664 (Ala. 1996). Green was not a party to the contract, so Finley is the only proper party in interest.

Green argues that although a stockholder cannot sue to redress the wrongs against a corporation in the absence of "exceptional circumstances", exceptional circumstances exist in this case because Green is the sole stockholder of the corporation. This is not an exceptional circumstance. All claims brought in this case are based on the underlying contract between CEC and Finley. Only the corporation is harmed. "It is well settled that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation." *See Pegram v. Hebding*, 667 So.2d

696, 702 (Ala. 1995). Such would be redundant in this case because the corporation is looking out for itself.

The motion for summary judgment as it relates to the claims of Finley will be denied.

DONE this 13th day of January, 2003.

WILLIAM M. ACKER, Jr.
UNITED STATES DISTRICT JUDGE